UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYA L. PICKELL

        **Plaintiff,**                      **CIVIL ACTION NO. 05-CV-74552-DT**

    vs.                                **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 12), that Plaintiff's Motion for Summary Judgment and Motion for Six Sentence Remand be **DENIED** (Docket # 8), and that Plaintiff's complaint be **DISMISSED.**

**II.  PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act.  42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Taya L. Pickell filed an application for Supplemental Security Income (SSI) with a protective filing date of June 29, 2001. (Tr. 47-49).  She alleged she had been disabled since August 2, 2000 due to irritable bowel syndrome/Crohn's disease, fibromyalgia, obesity, right shoulder pain, arthritis, sphincter of Oddi dysfunction, left eye blindness, and adjustment/depressive disorder.  *Id.* Plaintiff's claim was denied upon initial review.  (Tr. 33-37).  Plaintiff sought a review hearing before an Administrative Law Judge (ALJ).  (Tr. 38-39).  A hearing took place before ALJ John Ransom on May 19, 2003.  (Tr. 473-93).  Plaintiff was not represented at the hearing.  (Tr. 475).  The ALJ denied

Plaintiff's claims in an opinion issued on February 24, 2004. (Tr. 19-30). The Appeals Council denied review of the ALJ's decision on October 4, 2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 6-17). Plaintiff, now represented by an attorney, appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment.

### III.     MEDICAL HISTORY[1]

Plaintiff was examined by Delores A. Dinsmore, a social worker with the Michigan Psychiatric Association, in July 2001 for complaints of depression related to chronic pain. (Tr. 158-67). Plaintiff told Ms. Dinsmore that she could tend to her own personal care, perform household chores, prepare meals, shop, complete tasks, tend to her personal business, and use community resources. (Tr. 163). She also told Ms. Dinsmore that she liked to use the computer, read, and had gone camping with her daughter and granddaughter. *Id.* Ms. Dinsmore observed that Plaintiff's speech was soft but coherent and her thought content was organized and logical. Plaintiff maintained good eye contact. Her affect was appropriate although her mood was sad, depressed, and angry. (Tr. 165). However, Plaintiff was cooperative and friendly. *Id.* Ms. Dinsmore noted that Plaintiff was not impaired in her judgment, insight, memory, and attention. She indicated that Plaintiff had good concentration and attention. (Tr. 164). Plaintiff's ability to engage in abstract thinking was also not impaired. (Tr. 165). Plaintiff denied any hallucinations or current suicidal ideation. *Id.* Ms. Dinsmore diagnosed Plaintiff with depressive disorder and assigned her Global Assessment of Functioning ("GAF") score of 55 to 60.

Plaintiff subsequently attended therapy sessions with Ms. Dinsmore from July to December 2001. (Tr. 214-28). Plaintiff's mood was generally stable and she had a pleasant affect. Her interaction

---

[1]     Plaintiff primarily challenges the ALJ's findings as they relate to her mental impairments. Therefore, the records relevant to this issue are discussed herein.

with her therapist was appropriate. It was noted that Plaintiff was making slight to moderate progress toward her therapy goals of brightening her mood and learning to trust others. *Id.*

A consultative psychological examination was performed on December 7, 2001 by Dr. Karen J. Clark, a limited licensed psychologist. (Tr. 229-34). It was noted that Plaintiff was friendly and cooperative and that it was easy to develop a rapport with her. (Tr. 231). Plaintiff stated that she only had a few, superficial friends due to trust issues. However, she described herself as an extrovert although she preferred to be alone. *Id.* Plaintiff reported that she enjoyed music and reading but that reading was hard due to her eyesight. *Id.* She wanted to return to school to take computer classes because she could not do physical work any longer. *Id.* Plaintiff's contact with reality was intact and she had good insight but she exercised poor judgment. (Tr. 233). Plaintiff was able to repeat 8 numbers forward and 5 numbers backward and she could recall 3 objects after 3 minutes. (Tr. 232). Plaintiff could also name several presidents, major cities, and famous people. (Tr. 232-33). She could also do computations, engage in abstract thinking, exercise judgment, and voice the differences and similarities between objects and things. (Tr. 233). Dr. Clark diagnosed Plaintiff with an adjustment disorder with depressed mood and assigned her a GAF score of 52. (Tr. 233).

Dr. Ronald C. Marshall, a state agency psychologist, reviewed Plaintiff's medical records on December 13, 2001. (Tr. 235-45). Dr. Marshall opined that Plaintiff had an affective disorder but that it was not a severe mental impairment. (Tr. 235). Dr. Marshall concluded that Plaintiff only had mild limitations of activities of daily living, mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 245).

Thereafter, Plaintiff received treatment for her depression between February and May 2003. (Tr. 263-66). Her GAF score ranged from a 40 to 48. During her treatment sessions, Plaintiff's appearance was appropriate and her affect fluctuated between pleasant and sad and tearful. She generally had

organized speech, thought, and content processes. Plaintiff was being treated with Zoloft and Wellbutrin, which was helpful. (Tr. 266).

After the ALJ rendered his decision, Plaintiff submitted two pieces of evidence to the Appeals Council. On January 31, 2005, Plaintiff was evaluated by Dr. Randall Christensen, a limited licensed psychologist. Plaintiff had an intact remote memory. Her recent memory, immediate recall, and concentration were adequate and her general fund of knowledge was average. (Tr. 465-66). Dr. Christensen noted that Plaintiff was passive-aggressive in her communication and quick to point to her physical problems as the cause of her mental health problems. (Tr. 466). He believed that Plaintiff was less than forthright regarding her personal shortcomings and that she tended to exaggerate her problems. (Tr. 466). He diagnosed Plaintiff with major depressive disorder, non-recurring, somatization disorder, and personality disorder. Dr. Christenson assigned Plaintiff a GAF score of 45. He advised Plaintiff to take her medication and to seek individual counseling. Dr. Christensen was also concerned that Plaintiff would mismanage her funds due to her reported history of failing to pay her bills and spending money on non-essential items. (Tr. 467-68).

Dr. Tahira Jabeen examined Plaintiff in July 2005 at the request of the Family Independence Agency. Dr. Jabeen observed that Plaintiff was crying during the examination and she was tearful and labile as well as angry and irritable. (Tr. 460). Dr. Jabeen diagnosed Plaintiff with a mood disorder with traits consistent with borderline personality disorder. She assigned Plaintiff a GAF score of 50 and opined that Plaintiff would not be able to sustain a regular work routine. (Tr. 461). Specifically, Dr. Jabeen concluded that Plaintiff had marked limitations in her ability to: (1) maintain attention and concentration for an extended period; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without supervision; (4) work in coordination with or proximity to others without being distracted by them; (5)

complete a normal workday and worksheet without interruptions; (6) interact appropriately with the general public; (7) ask simple questions and request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (10) respond appropriately to change in the work setting. (Tr. 460-63).

### IV.    HEARING TESTIMONY

#### A.    Plaintiff's Testimony

Plaintiff was 38 years old when she testified before the ALJ and she had a high school education with some college education. (Tr. 476-77). Plaintiff testified that she was being treated for depression. (Tr. 481). She had a case manager and was seeing a psychiatrist for the past two years on a monthly basis to review her medication. Plaintiff stated that she had previously been seeing a therapist but would not see a therapist again until that week. *Id.* Plaintiff told the ALJ that she was not aware of any medicinal side effects. (Tr. 482).

Plaintiff testified that she had a driver's license and could drive but that she did not like to drive at night due to her left eye blindness. (Tr. 484). She stated that she could tend to her personal care although she sometimes had difficulty bathing. Plaintiff was generally able to do her household chores and grocery shop a little bit at a time. (Tr. 485). She liked to read and sew but her hands made it difficult. (Tr. 486). Plaintiff would sometimes go to the library and she often visited with her sister. (Tr. 487). Plaintiff had also attended college until March of that year. (Tr. 486).

Plaintiff asked the ALJ to keep the record open in case she had additional medical records to submit. The ALJ told Plaintiff that he would keep the record open for two weeks and that they would give her a pre-paid envelope in which she could send the materials to them. (Tr. 483, 493-95).

### B.     Vocational Expert's Testimony

Mary Williams, a rehabilitation counselor, testified as a vocational expert ("VE") at the hearing. The ALJ asked Ms. Williams what type and number of jobs would be available in the regional economy for an individual of Plaintiff's age, education, and work experience who could perform sedentary work but who: (1) needed a sit/stand option; (2) could not perform work with repetitive bending, twisting, turning, pushing, pulling, gripping, or grasping; (3) could not crawl, squat, kneel, or climb; (4) could not work above chest level; (5) needed simple, repetitive work; (6) required ready access to restroom facilities; and (7) had left eye blindness.  (Tr. 491). Ms. Williams testified that such an individual could perform 1,570 surveillance monitor positions, 1,780 referral and information clerk positions; and 5,560 order clerk positions. *Id.*

## V.     LAW AND ANALYSIS

### A.     STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524,

536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.    FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)    he was not presently engaged in substantial gainful employment; and

(2)    he suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    ARGUMENT

Plaintiff asserts that the ALJ's RFC finding was faulty because it failed to account for her "severe" adjustment disorder (major depressive disorder) and failed to incorporate her moderate limitations in maintaining concentration, persistence, or pace. Plaintiff also contends that the ALJ erred by not considering the combined effects of her obesity with her mental impairments in accordance with Social Security Ruling 02-01p. Plaintiff further argues that this case should be remanded for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g).

   1.   **Plaintiff's Mental RFC**

The ALJ determined that Plaintiff had moderate limitations in her ability to maintain concentration, persistence, or pace. Plaintiff asserts that the ALJ's RFC finding and subsequent hypothetical that only limited Plaintiff to simple, repetitive work failed to adequately account for Plaintiff's moderate mental limitations.

Sixth Circuit case law supports Plaintiff's argument that a hypothetical question must reflect an individual's limitations. *See Webb v. Comm'r of Social Sec.* 368 F.3d 629 (6th Cir. 2004). The court in *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), rejecting the notion that a hypothetical question must contain talismanic language, found that a question was sufficient provided that it encompassed the plaintiff's relevant limitations: "The ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment." Furthermore, the ALJ need not include a diagnosis of a mental impairment directly into a hypothetical question. *Webb*, 368 F.3d at 633, refusing to interpret *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002) as requiring such a conclusion.

The objective evidence in this case supports the ALJ's determination that Plaintiff's moderate limitations in concentration, persistence, or pace were adequately accounted for by limiting her to simple, repetitive work. As noted by the ALJ, none of Plaintiff's treating mental health doctors had

determined that Plaintiff's mental impairments imposed limitations upon her functional abilities. Examiner Dinsmore found no impairment of Plaintiff's concentration, judgment, memory, or abstract thinking. The state agency psychologist opined that Plaintiff had only mild limitations due to her mental impairments. Dr. Clark noted that Plaintiff exercised poor judgment but she had good insight. The results of Dr. Clark's psychological testing also showed that Plaintiff had adequate concentration and memory and an ability to exercise judgment, perform computations, engage in abstract thinking, and recognize the differences and similarities between objects and things.

Furthermore, Plaintiff's own reported activities also support the ALJ's determination. Plaintiff indicated that she was able to tend to her personal care and household chores without assistance. She enjoyed reading and watching television and she attended college courses. Although Plaintiff noted that these activities were limited to some extent, she indicated that those limitations were due to her physical condition rather than her mental one. (Tr. 82-86, 268-76, 484-86).

Plaintiff points to no evidence that the ALJ overlooked or that would support the imposition of more restrictive limitations due to her mental limitations as was the case in *Howard*, 276 F.3d at 240-41 (ALJ overlooked several of claimant's abilities in arriving at his RFC finding). Some courts within this district have determined in other cases that the RFC and subsequent hypothetical used here were not adequate to encompass the claimant's moderate limitations in concentration, persistence, or pace. Other courts have upheld the ALJ's findings as adequate. *See, e.g., Bohn-Morton v. Comm'r of Soc. Sec.,* 389 F. Supp. 2d 804 (E.D. Mich. 2005); *Eiseler v. Barnhart*, 344 F. Supp. 2d 1019 (E.D. Mich. 2004); *Broome v. Comm'r of Soc. Sec.,* 2004 WL 3086884 * 5 (E.D. Mich. 2004); *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698 (E.D. Mich. 2003). However, based upon the facts of this case, as noted above, the Court

cannot find that the ALJ's determination was either unreasonable or unsupported by substantial evidence.[2]

### 2. **Effect of Plaintiff's Obesity**

Plaintiff also asserts that the ALJ failed to consider the combined effects of Plaintiff's obesity with her mental impairments in accordance with Social Security Ruling ("SSR") 02-01p, 2000 WL 628049 *7 (when obesity is identified as a medically determinable impairment, the claimant's functional limitations associated with it must be considered when determining RFC).[3]
 Specifically, Plaintiff claims that the ALJ overlooked her letter in which she explained that the stress of her emotional condition had caused weight gain. (Tr. 459).

---

[2] Plaintiff's citation to *Bankston v. Comm'r of Soc. Sec.*, 127 F.Supp.2d 820 (E.D. Mich. 2000) does not dictate a different result. In *Bankston*, the Court found that one who "often" suffers from difficulties in concentration, persistence, or pace, as used in the old regulations, implies a deficiency in concentration that can be quantified as 50% of the time on a linear scale and which may not be consistent with substantial gainful activity. *Id.* at 826-27. Plaintiff seeks to equate "moderate" as used in the current regulations with that of "often" because both terms fall on the same place in a five-point scale. However, there is no Sixth Circuit authority that holds the two are interchangeable such that the logic of *Bankston* has any clear application to this case. Furthermore, there is no such authority that defines "moderate" as meaning a 50% deficit. *See Butler-Wade v. Comm'r of Soc. Sec.*, 2005 WL 361530 *7-8 (E.D. Mich. 2005).

[3] SSR 02-01p provides that:

> [An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record.

-10-

The ALJ has adequately addressed Plaintiff's obesity in his RFC. Indeed, the ALJ recognized that Plaintiff's obesity was a severe impairment and included a number of restrictions in his RFC to accommodate Plaintiff, including limiting her, in part, to a range of unskilled, sedentary work, which by definition requires only occasional standing and walking and involves little to no judgment to do simple duties. 20 C.F.R. §§ 416.967, 404.1568(a). He further limited her to work with restrictions of a sit/stand option, no repetitive bending, twisting, turning, pushing, pulling, gripping or grasping, crawling, squatting, kneeling, climbing, or reaching above chest-level. (Tr. 27).

Moreover, the ALJ noted that none of Plaintiff's treating and examining physicians had imposed limitations upon Plaintiff's activities of daily living and none had found her precluded from working all gainful activity due to her physical or mental impairments. (Tr. 26). Furthermore, the ALJ examined Plaintiff's self-reported activities of daily living and found them consistent with an ability perform full-time work activity of a sedentary nature and which involved only simple, repetitive job tasks.[4] (Tr. 26-27).

Plaintiff has not suggested how her obesity should have resulted in a RFC assessment more restrictive than that found by the ALJ. In fact, the only evidence to which Plaintiff points in support of her argument is her own letter in which she describes fluctuations in her weight that she believed was due to her depression. However, Plaintiff does not describe any limitations caused by these weight changes that undermine the ALJ's RFC assessment. Consequently, the Court finds no error.

### 3. Request For Six Sentence Remand

---

[4] The Court also notes that the state agency physician who reviewed Plaintiff's medical records had also considered the effects of Plaintiff's obesity and determined that Plaintiff was capable of a broader range of exertional limitations than those found by the ALJ. (Tr. 250-256).

Plaintiff seeks a sentence six remand based upon the newly submitted evidence of Dr. Tahira Jabeen's evaluation of Plaintiff in July 2005 in which Dr. Jabeen found Plaintiff to be moderately to markedly limited in her ability to carry out various functional activities.

The evidence that Plaintiff asks this Court to consider was not before the ALJ at the time he rendered his opinion. Consequently, the Court cannot consider this evidence in determining whether substantial evidence supports the ALJ's determination. *Cotten v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).

The party seeking remand has the burden of showing that it is warranted. *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d 709, 711 (6th Cir. 1988) (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).

It is not disputed that Dr. Jabeen's report was "new" in that it was created in July 2005. Although not specifically stated by Plaintiff, her implied argument is that she has established "good

cause" because the evaluation upon which the report was based also did not take place until July 2005. (Pl.'s Mot. for Summ.J. at 8-9). Plaintiff further asserts that Dr. Jabeen's report is material because there is a reasonable probability that Plaintiff would have been found disabled based upon Dr. Jabeen's opinion that Plaintiff had moderate or marked functional limitations that exceeded those previously found to exist by the ALJ. *Id.* at 9-10.

Defendant contends that Plaintiff has not established "good cause" for failing to secure this evidence earlier and that the Dr. Jabeen's report is not material in that it does not relate back to the relevant time period and is contradicted by the findings of Plaintiff's treating mental health doctors from that period. (Def.'s Mot. for Summ.J. at 13-14).

Even assuming that Plaintiff has established "good cause", Plaintiff has not established that Dr. Jabeen's evaluation and report constitute material evidence warranting a six sentence remand. Evidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ. *See Mingus v. Comm'r of Soc. Sec.*, 1999 WL 644341 * 5 (6th Cir. 1999). There is nothing in Dr. Jabeen's report that indicates it pertains to Plaintiff's mental status during the relevant time period. Indeed, the report describes Plaintiff's then-current condition during the evaluation. Dr. Jabeen noted her physical and emotional demeanor during the interview and commented that Plaintiff's had pressured speech at the time. When describing Plaintiff's daily activities, Dr. Jabeen's report focuses on Plaintiff's current state of being extremely labile and tearful. Dr. Jabeen also assigned Plaintiff a current GAF score of 50 but does not indicate Plaintiff's past GAF score. (Tr. 460-61). At best, Dr. Jabeen's report indicates that Plaintiff's condition may have deteriorated after the ALJ rendered his decision. However, "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citations omitted)

Furthermore, Dr. Jabeen's report is based upon a one-time examination of Plaintiff. Her report indicates that she did not perform any tests or protocols when examining Plaintiff. Rather, her assessment of Plaintiff's condition was based entirely upon Plaintiff's subjective and unverified complaints. Dr. Jabeen's report also shows that the only follow-up treatment recommended for Plaintiff was monthly visits with a psychiatrist on an as-needed basis. (Tr. 461). Given this information as a whole, the Court cannot conclude that "there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citations and internal quotation marks omitted).

## VI.    RECOMMENDATION

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment (Docket # 19) should be **DENIED**. Defendant's Motion for Summary Judgment (Docket # 22) should be **GRANTED** and the Plaintiff's complaint **DISMISSED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 8, 2007                    s/ Mona K. Majzoub
                                                                **MONA K. MAJZOUB**
                                                                 **UNITED STATES MAGISTRATE JUDGE**

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 8, 2007                    s/ Lisa C. Bartlett
                                                                  **Courtroom Deputy**